IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| OTIS G. WALKER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| vs. | : | |
| | : | NO. 1:09-CV-2550-WSD |
| | : | |
| UNITED STATES POSTAL SERVICE | : | |
| and AMERICAN POSTAL WORKERS | : | |
| UNION, AFL-CIO, ATLANTA METRO, | : | |
| AREA LOCAL 32, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANT UNITED STATES POSTAL SERVICE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant United States Postal Service (the "USPS") and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 hereby files its Memorandum of Law in Support of Its Motion for Summary Judgment ("Motion"), showing the Court as follows:

INTRODUCTION

This is an action under 39 U.S.C. § 1208(b).  The case arises out of Plaintiff's former employment with the USPS and his termination for working a second job at the Fairfield Inn & Suites ("Fairfield Inn") while on sick leave status from the USPS in violation of USPS policy.  Despite the fact that Plaintiff admits

that he worked at the Fairfield Inn while on paid sick leave status with the USPS and that he did so in violation of USPS employment policies, Plaintiff filed his Complaint in this Court.   His Complaint seeks to vacate the arbitrator's award, which held that the USPS had just cause to remove and terminate Plaintiff.

To prevail on his Complaint against the USPS, Plaintiff must prove not only that Defendant American Postal Workers Union, AFL-CIO, Atlanta Metro, Area Local 32 (the "Union") breached its duty of fair representation to him, but also that the USPS violated the applicable Collective Bargaining Agreement ("CBA") by terminating him without just cause and that the Arbitrator's decision should be vacated because he erred in construing or applying the applicable CBA.

Despite Plaintiff's exceedingly high burden, simply put, Plaintiff has presented no evidence that even approaches this extremely high standard.   The USPS therefore respectfully submits that no genuine issue of material fact exists and that summary judgment should be granted in its favor.

RELEVANT FACTS

Defendant respectfully refers the Court to the Statement of Undisputed Material Facts filed contemporaneously with the USPS's Motion for Summary Judgment and this Memorandum of Law.

ARGUMENT AND CITATION TO AUTHORITY

**I.    Summary Judgement Standard**

Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  As the Supreme Court has explained, summary judgment is proper when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Thus, a defendant can establish its right to summary judgment merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must establish that summary judgment is inappropriate by demonstrating specific facts that show a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

Thus, to defeat summary judgment, the non-moving party must come forward with "'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., at 324 (quoting Fed. R. Civ. P.

56(e)).   The non-moving party cannot overcome summary judgment merely by resting on his allegations or pleadings (Fed. R. Civ. P. 56(e)), and "mere inferences, conjecture, speculation or suspicion are insufficient to establish a material fact upon which to base the denial of summary judgment." Ferron v. West, 10 F. Supp. 2d 1363, 1366 (S.D. Ga. 1998) (internal quotations and citations omitted); accord Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir. 1985).   The non-moving party must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Young v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).   The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

## II.  **Statutory Framework**

The Postal Reorganization Act of 1970, Pub. L. No. 91-375, 84 Stat. 719, 1970 U.S. Code Cong. & Admin. News 842 (1970), provides that collective bargaining agreements between the USPS and bargaining representatives may include provisions for binding arbitration or other similar procedures to resolve "grievances and adverse actions" arising under a collective bargaining agreement.

39 U.S.C. 1206(b).  The Postal Reorganization Act provides that "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy." 39 U.S.C. 1208(b).  Because this language is identical in all relevant respects to the language set forth in Section 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a), cases interpreting the latter have been interpreted to apply to Section 1208(b). Bowen v. United States Postal Service, 459 U.S. 212, 232 n.2 (1983) (White, J., concurring in part and dissenting in part); Miller v. U.S. Postal Service,985 F.2d 9, 10 n.1 (1st Cir. 1993); United States Postal Service v. American Postal Workers Union, AFL-CIO, 893 F.2d 1117, 1120 (9th Cir.), cert. denied, 498 U.S. 820 (1990); McNair v. United States Postal Service, 768 F.2d 730, 735 (5th Cir. 1985).

Where, as here, the CBA contains a provision for binding arbitration, judicial review of a claim that the agreement has been breached is available only when "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." DelCostello v. Internat'l Brotherhood of Teamsters, 462 U.S. 151, 164 (1983).  In such an instance, an employee may bring suit against the employer, the

union, or both.  DelCostello, 462 U.S. at 164 (citations omitted).
Such a suit is generally known as a "hybrid" suit.  Coppage v. U.S.
Postal Service, 281 F.3d 1200, 1204 (11th Cir. 2002).

A hybrid suit is comprised of two causes of action:  (1) a
suit against the employer – here, the USPS – alleging a breach of
the CBA, and (2) a suit against the union, alleging a breach of the
union's duty of fair representation.  Id.  While two different
causes of action exist, "'the two claims are inextricably
interdependent.'"  DelCostello, 462 U.S. at 165 (internal citations
omitted); see United Parcel Service v. Mitchell, 451 U.S. 56, 62
(1981) (explaining that the duty of fair representation claim is an
"indispensable predicate").  This is because, to prevail against
either the employer or the union, the plaintiff-employee must show
not only that his discharge was contrary to the contract, but also
that the union breached its duty of fair representation.
DelCostello, 462 U.S. at 165.  Only after an employee proves that
the union violated its duty of fair representation may the employee
sue the employer directly.  Vaca v. Sipes, 386 U.S. 171, 186
(1967).  The party challenging an arbitration award – here,
Plaintiff – bears the burden of asserting sufficient grounds to
vacate the award.  Aldred v. Avis Rent-A-Car, 247 F. App'x. 167,
169, 2007 WL 2110720, at *1 (11th Cir. Jul. 24, 2007).

III. __Summary Judgment Should Be Granted Because Plaintiff Failed to
     Prove the Union Breached Its Duty of Fair Representation__

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190.  The Supreme Court has held that union actions are arbitrary "only if, in light of the factual and legal landscape, it can be fairly characterized as so far outside of a 'wide range of reasonableness,'" such that it "is wholly 'irrational' or 'arbitrary.'"  Air Line Pilots Ass'n, Intern. v. O'Neill, 499 U.S. 65, 66, 111 S.Ct. 1127, 1129 (1991) (internal citation omitted).  "The grievance and arbitration process is not conducted in a judicial forum and union representatives are not held to strict standards of trial advocacy." Harris v. Schwerman Trucking Co., 668 F.2d 1204, 1206 (11th Cir. 1982).

Courts may not substitute their view for those of a union. Id.  Instead, "[a]ny substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." Id.

As the Eleventh Circuit has explained, courts have been "'uniform in holding that neither negligence on the part of the union nor a mistake in judgment is sufficient to support a claim that the union acted in an arbitrary and perfunctory manner.'"

<u>Smith v. Babcock & Wilcox Co., Refractories Div., Augusta, Ga.</u>, 726 F.2d 1562, 1565 (11th Cir. 1984); see <u>Parker v. Connors Steel</u>, 855 F.2d 1510, 1521 (11th Cir. 1988) ("[n]egligence, even gross negligence, is not enough to sustain a claim for breach of the duty of fair representation in any context."); <u>Antrim v. Burlington Northern</u>, 847 F.2d 375, 378 (7th Cir. 1988) ("Negligence, even gross negligence, is not 'unfair' representation.") <u>Higdon v. United Steelworkers of America, AFL-CIO-CLC</u>, 706 F.2d 1561, 1562 (11th Cir. 1983) ("negligence does not constitute a breach of the duty of fair representation"). Thus,

> the employee's burden 'remain(s) a substantial one.' . . . Nothing less than a demonstration that the union acted with reckless disregard for the employee's rights or was grossly deficient in its conduct will suffice to establish such a claim. . . In this context, we believe that a claim that a union acted 'perfunctorily' requires a demonstration that the union ignored the grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention.

<u>Harris</u>, 668 F.2d at 1206-07. "A union exhibits bad faith only if it acts in a fraudulent, deceitful, or dishonest fashion." <u>Walker v. Runyon</u>, 979 F. Supp. 1363, 1379 (D. Kan. 1997) (citing <u>Considine v. Newspaper Agency Corp.</u>, 43 F.3d 1349, 1361 (10th Cir. 1994).

The undisputed facts of the present case do not demonstrate discriminatory actions, reckless disregard, arbitrariness, or bad faith conduct on the part of the Union. On the contrary, the evidence shows that the Union at all times acted zealous on

Plaintiff's behalf, acting in good faith and upholding its duty of
fair representation.  See Hudson Dep. at 59-60.  The Union did not
ignore Plaintiff's grievance.   Instead, the Union resolved the
First Notice of Removal (Plaintiff Dep. at 102-03; Complaint at ¶
22 (admitting First Notice of Removal "is not the subject of the
instant action")), and, with regard to the Second Notice of
Removal, the Union appealed Plaintiff's grievance and took the
matter to arbitration.  See Parker v. Connors Steel Co., 855 F.2d
1510, 1521 (11th Cir. 1988) ("It is ironic that the employees
challenge the Union's processing of their grievances
notwithstanding the fact that the Union pursued all of their
grievances through arbitration and received an award on two of the
grievances presented to the arbitrator."); Turner v. Air Transport
Dispatchers' Ass'n, 468 F.2d 297, 300 (5th Cir. 1972) ("The mere
fact that the ATDA refused to file Turner's grievance through the
Association's grievance representative does not amount to
perfunctory or arbitrary treatment."); Acuff v. United Papermakers
and Paperworkers, AFL-CIO, 404 F.2d 169, 171 (5th Cir. 1968) ("a
union may properly determine not to pursue a member's grievance to
the arbitration stage at all.").  Thus, the Union acted in good
faith and did not at any time act in an arbitrary or perfunctory
manner.  See Hudson Dep. at 60.

Moreover, in addition to completing every step in the
grievance process and arbitrating Plaintiff's grievance on two

separate occasions, Plaintiff's grievance was given considerable time and attention by Union representatives.  At one point, Plaintiff was going to the Union "just about every day."  Plaintiff Dep. at 87-88.  Further, Union Rep. Hunter actively worked on Plaintiff's behalf, was a "zealous" advocate, and was "instrumental" in representing Plaintiff.  Id. at 102, 117-18.  The two spoke "regularly" – "at least once a week."  Id. at 139; see also id. at 143.  Plaintiff was also in contact with Kenneth Beasley, the Union President about his grievance.  Id. at 154.

Furthermore, in preparation for the second arbitration, Advocate Hudson spent "well over 24 hours" – likely "24 to 48 hours" preparing for arbitration (Hudson Dep. at 22-23), and Plaintiff admits that Advocate Hudson did "the best he could" on Plaintiff's behalf and was prepared for arbitration.  Plaintiff Dep. at 160, 189.  Notably, by Plaintiff's own admission, during the grievance process, the Union presented "very compelling arguments on [Plaintiff's] behalf."  Id. at 122.  Thus, the evidence demonstrates that Plaintiff was, at all times, well represented throughout the grievance process.  Moreover, even if Advocate Hudson was unprepared for arbitration – a fact the USPS denies – at worst, his conduct would have been negligent, and negligence, even gross negligence, is insufficient to sustain a claim for breach of the duty of fair representation.  Parker, 855 F.2d at 1521.

Plaintiff claims the Union negligently transferred his case to different Union representatives (Complaint at ¶ 59) – a fact not supported by the record (Plaintiff Dep. at 241) – and that the Union was negligent because they should have brought Vice President Brown and Union Rep. Hunter back for his second arbitration. Walker Dep. at 186.  Despite this allegation, it is undisputed that neither Vice President Brown nor Union Rep. Hunter were available to act as advocates at the second arbitration, as Vice President Brown had retired and Union Rep. Hunter was no longer a Union officer.  Plaintiff Dep. at 150-51, 155-56; Hudson Dep. at 19.

As a result, Advocate Hudson was assigned to Plaintiff's case "[a] few months" prior to arbitration.  Hudson Dep. at 20.  At the time, Advocate Hudson had more than 13 years of experience representing USPS employees at arbitration (Hudson Dep. at 7), was locally and nationally certified, and had handled 15 to 20 arbitrations a year since 1995.  Hudson Dep. at 10-11, 14-15.  The assignment of Advocate Brown was not arbitrary, perfunctory or negligent – the Union simply had no choice but to assign a new advocate as a result of Union elections and Vice President Brown's retirement.  Plaintiff Dep. at 150-51, 155-56; Hudson Dep. at 19.

Plaintiff also complains that the Union failed to obtain Point of Sale ("POS") reports.  Plaintiff Dep. at 123-24.  The POS reports, however, relate solely to Charge #1.  Since the arbitrator did not uphold Plaintiff's discharge based on Charge #1, this is

irrelevant and not material to the issues before this Court. <u>Higdon</u>, 706 F.2d at 1562; <u>see also</u> Plaintiff Dep. at 277.

In <u>Higdon</u>, the plaintiff complained about the union's failure to investigate his role in an argument. <u>Id.</u> While the <u>Higdon</u> court recognized that a "union's failure to investigate a member's grievance can violate its duty of fair representation," it held that the union did not breach its duty in that case because the plaintiff was discharged for insubordination and failure to follow instructions, not for his role in the argument. Consequently, any investigation into the argument "would have provided no information helpful in securing [plaintiff's] reinstatement," such that such investigation could not "be deemed a material fact." <u>Id.</u> In this case, since Plaintiff's termination was upheld solely on the basis of Charge #2 – charges Plaintiff admitted – documents related to Charge #1 would not have provided information that could have resulted in securing Plaintiff's reinstatement. <u>See id.</u>

Plaintiff also complains the Union advised him not to answer questions in violation of the USPS's Employee & Labor Relations Manual ("ELM"), Section 665.3. <u>See</u> Complaint at ¶¶ 50-53. As an initial matter, where, as here, an employee may incriminate himself by answering questions, the Union may advise that employee not to answer certain questions based on the right against self-incrimination. Hudson Dep. at 38; <u>see</u> Plaintiff Dep. at 206.

More importantly, while Plaintiff's failure to cooperate in

the investigation violated ELM Section 665.3, the Arbitrator concluded that "[h]ad [Plaintiff] answered the questions and cooperated in the investigation, it would not have changed the facts as presented and as he testified to." Complaint at B-19; <u>see also</u> Hudson Dep. at 40.  This is because, had Plaintiff responded to questions during earlier steps in the grievance process, his answers would have been the same as those given at arbitration – an admission that he did, in fact, work a second job while on sick leave as asserted in Charge #2.  Plaintiff's failure to respond to questions posed at earlier steps in the grievance process and Plaintiff's allegation that he did so based on Union advice is, therefore, immaterial and irrelevant.  Complaint at B-19; <u>see also</u> Hudson Dep. at 40; <u>Higdon</u>, 706 F.2d at 1562.

Plaintiff also complains about the Union's failure to call character witnesses on his behalf.  Complaint at ¶¶ 54, 56; Plaintiff Dep. at 160.  Advocate Hudson opted not to call character witnesses at arbitration based on his communications with Union Steward Mateo Smith ("Steward Smith"), the Union Steward assigned to Pharr Road.  Hudson Dep. at 58-59.  Steward Smith told Advocate Hudson that the charges brought against Plaintiff were true – that Plaintiff had been going to Crunch Gym without clocking out and had been working at the Fairfield Inn while on sick leave status "for quite some time," and that personnel at Pharr Road were aware of this.  Hudson Dep. at 58-59.  Advocate Hudson was therefore

concerned that character witnesses from Pharr Road would only serve to corroborate the USPS's case and further damage Plaintiff's case. Hudson Dep. at 59.

Further, while Advocate Hudson did not call character witnesses per se, he did present character evidence at arbitration. On cross examination, Supervisor Walker opined that when Plaintiff was actually at his terminal and was working, he was a good employee. Hudson Dep. at 72-73; see Emma Walker Dep. at 14. In addition, Plaintiff testified about his 18 years of good service and good work at the USPS. Plaintiff Dep. at 189. While Plaintiff may disagree with Advocate Hudson's strategy, at most, the decision not to call character witnesses was a mistake in judgment, and this is insufficient to support a claim that the Union breached its duty of fair representation, acted arbitrarily, or perfunctorily. Smith, 726 F.2d at 1565.

Finally, Plaintiff complains the Union "failed to offer a statement from or even contact Plaintiff's supervisor at the Phar (sic) Road Store" to determine whether Plaintiff had permission to work his second job. Notably, however, Plaintiff admits he did not have permission to work a second job while on sick leave status from the USPS. Plaintiff Dep. at 176, 268. As such, his allegation that the Union failed to obtain evidence to the contrary is asserted in bad faith.

The Union is entitled to deference and should be given wide

latitude in carrying out its bargaining responsibilities.  Harris, 668 F.2d at 1206.  Here, in looking at the actions undertaken by the Union throughout the grievance process and arbitration, the record is devoid of evidence to support the assertion that the Union acted perfunctorily, ignored Plaintiff's grievance, inexplicably failed to take some required step, or gave the grievance merely cursory attention.  See id. at 1206-07.  Further, the Union's actions were not arbitrary and were not "so far outside of a 'wide range of reasonableness'" as to be "wholly 'irrational' or 'arbitrary.'"  O'Neill, 499 U.S. at 66 (internal citation omitted).  Instead, the Union and its representatives zealously advocated for Plaintiff, making thoughtful judgments based on the facts of the case and Plaintiff's self-admitted guilt.  All of these judgments and actions were within the "'range of reasonableness.'"  Id. (internal citation omitted).

At most, the Union may have made mistakes in judgment or acted negligently – an assertion the USPS disputes – but this is insufficient to support a claim that the Union acted breached its duty of fair representations.  Smith, 726 F.2d at 1565.

While Plaintiff wanted to return to work at the USPS and, therefore, was displeased with the result of the grievance process, the evidence demonstrates that Plaintiff was not unhappy with the actual efforts undertaken by the Union, the arguments asserted, or the underlying grievance process.  Plaintiff Dep. at 177.

Plaintiff's disagreement with the Arbitrator's award, however, does not amount to a breach of the duty of fair representation.

Because the undisputed evidence demonstrates that the Union and its representatives did not breach the duty of fair representation, Plaintiff has not met his burden of proving this "indispensable predicate" to his claim against the USPS. <u>Mitchell</u>, 451 U.S. at 62; <u>see</u> <u>Vaca</u>, 386 U.S. at 186 (finding suit against employer may only be brought where employee can prove union breached duty of fair representation). Plaintiff, therefore, cannot prevail on his claim against the USPS, and summary judgment should be granted.

**IV.** **<u>Summary Judgment Should Also Be Granted Because Plaintiff Has Not Alleged that the Arbitrator Failed to Comply With the Terms of the Collective Bargaining Agreement</u>**

Not only does Plaintiff's Complaint against the USPS fail because he failed to prove that the Union breached its duty of fair representation, but it also fails because Plaintiff's Complaint does not even assert that Arbitrator Cannavo erred in construing or applying the applicable CBA. Instead, Plaintiff's Complaint alleges only that the USPS breached the CBA, but nevertheless requests that the arbitration award be vacated and that Plaintiff be reinstated.

When a district court reviews a labor arbitration award, that review is limited to a determination of whether the award is irrational, whether it fails to draw its essence from the CBA, or

whether it exceeds the scope of the arbitrator's authority. Aldred, 247 F. App'x. at 170, 2007 WL 2110720, at *2; Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1263 (11th Cir. 1996).   Further, in deciding whether to vacate an arbitration award, the relevant inquiry is whether the arbitrator is "'even arguably construing or applying the contract and acting within the scope of his authority.'" Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728 (2001) (internal citations omitted).

In this case, the allegations set forth in Count I of Plaintiff's Complaint relate to actions undertaken by the USPS. Complaint at ¶¶ 32-47.   The actions of the USPS are unrelated to and distinct from the issue of whether the Arbitration Award is irrational, whether the Arbitration Award draws its essence from the CBA, or whether Arbitrator Cannavo exceeded the scope of his authority.   Plaintiff's allegations regarding the USPS, therefore, do not provide permissible grounds for vacating Arbitrator Cannavo's Award upholding Plaintiff's removal.   Moore v. Potter, 275 F. App'x. 405, 411, 2008 WL 1874566, at *5 (5th Cir. Apr. 28, 2008).

Moreover, on several occasions, the Supreme Court has reiterated and reinforced a deferential standard of review for labor arbitration decisions.   See e.g., Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S.Ct. 1724, 1728

(2001) ("Judicial review of a labor-arbitration decision pursuant to such an agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562-563, 96 S.Ct. 1048, 1055 (1976) ("Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'"). Courts "should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes.'" Hines, 424 U.S. at 562-563. Thus, as long as an arbitrator is "'even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" Garvey, 532 U.S. at 509 (internal citations omitted).

In the instant case, Plaintiff's Complaint fails to assert that the Arbitrator erred in construing or applying the applicable CBA. Moreover, the record is devoid of any evidence to support such an assertion. Instead, the Arbitration Award, attached to Plaintiff's Complaint as Exhibit B, demonstrates that Arbitrator Cannavo understood the terms of the CBA, understood the resulting burdens of proof, and properly applied them to the evidence presented at arbitration. See Complaint at B-13-B-19; accord Air

<u>Line Pilots Ass'n, Intern. v. Eastern Air Lines, Inc.</u>, 632 F.2d 1321, 1324 (11th Cir. 1980) ("As long as the award is essentially drawn from the agreement, it is valid and effectively etched in stone").  Consequently, Plaintiff's claim that there was a breach of the CBA fails, and his resulting prayer for relief fail as a matter of law.  Judgment in favor of the USPS should therefore be granted.

**V.    <u>Summary Judgment Should Be Granted Because Plaintiff Failed to Prove the USPS Breached the Collective Bargaining Agreement by Discharging Him Without Just Cause</u>**

In addition to the above-set forth reasons why summary judgment is warranted, Plaintiff's Complaint fails because there is no evidence to support the assertion that the USPS breached the CBA by discharging Plaintiff without good cause or that the USPS in any way breached the CBA.  In fact, the undisputed evidence demonstrates that, with respect to Charge #2 of the Second Notice of Removal, the USPS at all times complied with the CBA, including Article 16 related to Discipline Procedures.  Norcross Dec. at ¶ 6, 9-10.

Count I of Plaintiff's Complaint asserts various allegations against the USPS.  Complaint at ¶¶ 32-47.  These allegations are founded upon the assertion that Plaintiff somehow had the "actual and/or tacit" approval of his supervisors to work a second job (Complaint at ¶ 39), such that there was not just cause to remove him.  This assertion is unfounded, as the undisputed evidence

demonstrates that Plaintiff's supervisors did not at any time give him permission to work a second job while on leave from the USPS[1] – a fact that Plaintiff admitted (Plaintiff Dep. at 176, 210, 253, 268) and a fact that Advocate Hudson was aware of.  Hudson Dep. at 55-56.

Moreover, the evidence demonstrates that just cause existed to remove Plaintiff.  Section 513.312 of the ELM provides "an employee who is in sick leave status may not engage in any gainful employment unless prior approval has been granted by appropriate authority."  Complaint at ¶ 25, Exhibit B.  In light of this, Charge #2 of the Second Notice of Removal charged Plaintiff with "Improper Conduct" based on Plaintiff's engaging in other gainful employment while on sick leave status with the USPS in contravention of ELM, Section 513.312.  Complaint at ¶ 25, Exhibit A-2, Exhibit B.  Plaintiff admits being guilty of these charges, as Plaintiff did, in fact, work at the Fairfield Inn while on paid sick leave status from the USPS.  Plaintiff Dep. at 169-71.  As set forth above, Plaintiff's supervisors did not authorize him to do

---

[1] Contrary to the unsupported assertion that Plaintiff's supervisor's gave tacit approval for him to work at the Fairfield Inn while on paid sick leave from the USPS, the uncontroverted evidence demonstrates that Supervisor Walker actually warned Plaintiff that USPS policy prohibited him from working his second job while on sick leave status from the USPS.  Plaintiff Dep. at 62 ("she did say I shouldn't work -- I better not work my part-time job if I'm out on sick leave."); Emma Walker Dep. at 18.

so.  Plaintiff Dep. at 176, 210, 253, 268; Hudson Dep. at 55-56.

Despite admitting the charges,[2] Plaintiff contends that his 18 years of employment with the USPS should have been a mitigating factor (Complaint at ¶ 44) and that the USPS should have used "progressive discipline."  Complaint at ¶ 45.  Despite these contentions, there is no evidence that indicates the CBA prohibited the USPS from removing Plaintiff because of his 18 years with the USPS.  Moreover, there is no evidence that the CBA required the use of progressive discipline.

Instead, the evidence of record shows that, where, as here, employees are charged with "stealing time" or "theft,"[3] those employees are generally removed and terminated.  Husdon Dep. at 49-50; Complaint at B-17-18; accord Plaintiff Dep. at 274-75 (admitting that stealing, theft, lying, and dishonesty are all terminable offenses).  Further, because the USPS considers theft to be a terminable offense, progressive discipline is not used in these instances.  Husdon Dep. at 57; Complaint at B-17-18.

As part of his Arbitration Award, Arbitrator Cannavo

---

[2] At his deposition, Plaintiff also admitted that he left work to go to Crunch Gym without clocking out from the USPS, as alleged in Charge #1.  Plaintiff Dep. at 259-60.  Arbitrator Cannavo, however, found that there was not sufficient evidence to sustain that Charge, such that the allegations set forth in Charge #1 are not before this Court.

[3] The offenses in Charge #1 and Charge #2 of the Second Notice of Removal were both considered "theft."  Husdon Dep. at 57.

specifically discussed and cited various cases provided to him by the USPS that support the proposition that, under the CBA, the USPS need not provide progressive discipline to an employee who requests and takes sick leave from the USPS and then subsequently works a second job.  Complaint at B-17-B-18.  These cases also support the assertion that an employee's length of service is not a mitigating factor in such a situation.[4]  Id. at B-17-B-18.

Based on the facts, the evidence of record, and the numerous admissions made by Plaintiff, the undisputed evidence demonstrates that the USPS had just cause to remove Plaintiff and that the USPS at all times complied with the CBA with regard to Charge #2 of the

_____

[4] Arbitrator Cannavo cited the following: (1) "...Obviously, there is no need for an employer to provide progressive discipline to an employee who fraudulently requests and takes sick leave and subsequently works and outside job.  Such cases usually are treated as instances of misconduct akin to dishonesty, rather than simple absenteeism, which normally would call for progressive discipline.  Moreover, arbitrators normally do not consider an employee's length of service, or a lack of past disciplinary action, when an employer has proven such an employee has been dishonest or misrepresented their employment status."  (Case No. FOIN-4F-D 090465949); (2) "[The Grievant] had no approval to engage in other employment while on sick leave/ FMLA under false pretenses.  Requesting sick leave implies that she was too sick to work any job.  Consequently, the grievance ... is denied." (Case No. KOOC-4K--D 06110539); and (3) "It is also not plausible that the grievant, with his thirty-three years of service, was unaware of the rule prohibiting an employee in a sick leave-status from engaging in any gainful employment unless prior approval has been granted by an appropriate authority...the Grievant's abuse of sick leave/FMLA was flagrant and repeated; there is no rational basis to hold that his length of service constitutes 'mitigation'..." (Case No. JQOC-IJ-D06002165). Complaint at B-17-B-18.

Second Notice of Removal.  Norcross Dec. at ¶ 6.  The USPS acted in good faith observance of the principles and procedures set forth in Article 15, Grievance-Arbitration Procedure, and Article 16, Discipline Procedures, of the CBA.  Norcross Dec. at ¶¶ 8-9.

In addition, the USPS properly determined that there was just cause to remove Plaintiff based on his impermissibly working at the Fairfield Inn while on paid sick leave status with the USPS - charges admitted by Plaintiff.  Plaintiff Dep. at 169, 171; Complaint at Exhibit B.  Arbitrator Cannavo agreed, concluding that the USPS had just cause to terminate Plaintiff.  Complaint at Exhibit B-16.  The Court should therefore treat Arbitrator Cannavo's decision with great deference.  Florida Power Corp. v. Int'l Broth. of Elec. Workers, System Council U-8 Intern. Broth. of Elec. Workers, Local Union 433, 847 F.2d 680, 681-82 (11th Cir. 1988) ("Perhaps the single most significant and common issue to which this deference extends is the issue of what constitutes sufficient and reasonable cause for discharge.").

Once it is established that an arbitrator had the power to make a just cause determination, the district court is not free to review the merits of that determination.  Super Tire Eng'q Co. v. Teamsters Local Union No. 676, 721 F.2d 121, 125 (3rd Cir.1983) cert. denied, 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984).  In this case, there is no allegation that Arbitrator Cannavo did not have the authority to make a just cause determination - in fact,

that the was the very issue for which this matter was referred to arbitration (Complaint at Exhibit B-2) – and the Court should therefore accord deference to his determination.  See <u>Florida Power Corp.</u>, 847 F.2d at 681-82.

## Conclusion

For the foregoing reasons, the USPS respectfully submits that summary judgment should be granted in its favor.


This 5th day of October, 2010.

<div style="margin-left:40%">

Respectfully submitted,

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY


 /s/ Darcy F. Coty
DARCY F. COTY
ASSISTANT U.S. ATTORNEY
600 U.S. Courthouse
75 Spring Street, SW
Atlanta, Georgia 30303
(404)581-6043
Ga. Bar No. 259280
darcy.coty@usdoj.gov

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| OTIS G. WALKER,<br><br>    Plaintiff,<br><br>      vs.<br><br>UNITED STATES POSTAL SERVICE<br>and AMERICAN POSTAL WORKERS<br>UNION, AFL-CIO, ATLANTA METRO,<br>AREA LOCAL 32,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:   CIVIL ACTION<br>:<br>:   NO. 1:09-CV-2550-WSD<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## **CERTIFICATE OF COMPLIANCE**

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in Local Rule 5.1B for documents prepared by computer.

This 5th day of October, 2010.

                     /s/ Darcy F. Coty
                    DARCY F. COTY
                    ASSISTANT UNITED STATES ATTORNEY

```
                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
                            ATLANTA DIVISION
                                         :
OTIS G. WALKER,                          :
                                         :
        Plaintiff,                       :
                                         :      CIVIL ACTION
             vs.                         :
                                         :      NO. 1:09-CV-2550-WSD
UNITED STATES POSTAL SERVICE             :
and AMERICAN POSTAL WORKERS              :
UNION, AFL-CIO, ATLANTA METRO,           :
AREA LOCAL 32,                           :
                                         :
        Defendants.                      :
                                         :
```

## CERTIFICATE OF SERVICE

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system, including serving a copy upon:

        Eric Croone
        E. Croone & Associates, LLC

        Matthew Boyd
        Will Ellis, Jr.
        Hawkins & Parnell, LLP

        Norman J Slawsky
        Jacobs & Slawsky, PA


This 5th day of October, 2010.


                              /s/ Darcy F. Coty
                              DARCY F. COTY
                              ASSISTANT U.S. ATTORNEY